Would the lawyers who are going to argue the case please approach and introduce yourself. Good morning, Your Honor. This is Robert Weissman for the appellant. Good morning, Captain. Okay, the appellant knows that you're going to have to reserve some time for rebuttal. I'd appreciate reserving at least five minutes for rebuttal. Okay. Is there a recommended amount of time you want? Well, it's usually around 15 minutes is all we give you. Okay. Total? Total. Okay. Thank you. May it please the Court, we're here to discuss the question really of an indemption. I'd like to point out to the Court just briefly about the facts of this case. The account in question had four different account numbers prior to the filing of this lawsuit. There was an initial account number when the account was opened at David Noyes, and then David Noyes went through a change of clearinghouse, and their bookkeeping system required them to change the account number to the account number that appears in the trust, 71461159. Then when Irwin Ruby had gone through, and for convenience I'm going to call him Irwin, and I'm going to refer to his sister as Bernice. When Irwin and Bernice had gone through their estate planning process, at the end of that process their attorney, Mr. Gottman, suggested that Irwin take the joint tenancy account and put it into the trust in order to effect the gift. At that time the account number changed again, and then it became 12855122. Then when Irwin died and Bernice came in to take control of the trust, at that time they used her Social Security number and they changed the account number again. Now for a fourth time it became 85441672. And all of these I can give to the record, but that's all really undisputed fact. The number changed four times. And really what we'd like to stress is that this change of account number really was not much of a change. The assets were exactly the same assets every time the account number changed. So when Irwin Ruby had his trust drafted, Article 4 said, upon my death the trustee shall distribute the contents of my account, the David A. Noyes Company account number 71461159, including cash and securities and equal shares, 25% to the following four groups. So when Irwin, at the conclusion of his estate planning process, went to Noyes and had that account transferred into the trust, which by the way was the only thing he could do to preserve the gift. Had he not done that, there would be no question of redemption. The gift would have gone to Bernice by survivorship. So in order to preserve the gift, Irwin transferred the account into the trust. And when he did that, all of the contents from the account made it into the trust. So if you would recall the deposition of Mr. Laser. Mr. Laser was the account executive at David Noyes. In his deposition, Mr. Laser testifies that each and every stock holding in account 71461159, right after the change, each and every one of those account numbers then becomes, or every one of those stock holdings now becomes account 12855122. So there's no drastic change here. If you look at all the cases that regard redemption, redemption is not a favored theory in the law. Aren't we supposed to look into his intentions? We're supposed to look into his intentions, exactly. And what you're going to do is you're going to present to us what evidence there is to show that his intention was to keep this in the trust. Isn't this what this is all about? This is exactly what it's all about. So during the estate planning process, the process began in 2003. June of 2004, Irwin makes clear to Mr. Gottman, the draftsman, and this is at page 771 of the record. He says most of the estate would not be for the benefit of Bernice. So he makes that quite clear. He has Mr. Gottman change the initial draft of the trust on July 7, 2004. This is in the record pages 774 to 775 in Mr. Gottman's deposition. He makes it quite clear that he changes his trust. It's never been signed, and they've gone through a year-long process of estate planning. And he asks Mr. Gottman, and Gottman says, he specifically told me to put the account 71461159 named and then make that the contents of that account for the benefit of these four people. So to effect that gift, then on the advice of Gottman, Irwin Ruby, Trent severs the joint tenancy he had with Bernice and puts it into the trust. There can be no clearer explanation of his intent. Gottman testifies that that's what he intended. Gottman's notes indicate that he makes that statement, that he understands that most of his estate will not be for Bernice, and he creates this gift. So they give him this redrafted trust on July 7, 2004. On July 20, 2004, that's what gets executed, and then subsequent to that date, he goes to Noyes and has that account transferred. So everything we're talking about after that are the post-death actions of Bernice. And one thing I also want to make clear to you is that during the estate planning process, my clients are not involved. They don't know anything about this transfer being created for their benefit, and they only find out about it in 2005 when Irwin Ruby meets with them and tells them about it. You understand, we've read the briefs, we've looked at the record, so we're interested in your view on this case. Yeah, I have a question just as Judge Gordon, I call you counselors. Judge Gordon's indicated we do know the facts. If we do not believe an redemption occurred, there was an agreement between the plaintiffs to distribute, I think, for Bernice to distribute $255,000 as part of Irwin's request to people. If we believe, or if our decision is that everything in that trust goes to the plaintiffs, what about that $255,000? Would she have to pay it back, or because they agreed to its distribution, would that be taken from their portion? That's a real stretch to say that they agreed. She had some general discussions with them. She's in her 90s right now. At the time, she was making some suggestions and having some conversation with them, but the four of them never actually made any agreement with her whatsoever. She sent them that $30,000 down payment. They took that as a down payment. There's no evidence in the record that they made any sort of election and decided to take $30,000 instead of more than a quarter of a million dollars. I'm not talking about to them. I mean the bequest to others. The bequest to others. The point is, I understand. She first of all admits that it's a specific bequest when she asserts that there was an redemption because only a specific bequest can it be. So she admits in her pleadings and asserts to this court that there was an redemption. Only a specific bequest can it be. So if the gift to the plaintiff's appellants was a specific bequest, they primed the rest of the people mentioned in that trust. Now, we really don't know what happened with those gifts. I mean, why is the trust written like that? Perhaps Mr. Gottman did poor math. Perhaps he thought there was another source of funding that would come into the trust besides those accounts. Irwin's probate estate was never probated. I don't know what Bernice did with Irwin's other assets, and if there were other assets intended to come into that trust, they never made it there. But if Mr. Gottman did poor math and thought there would be additional sources of funding that never got to that trust, I really can't account for that. But those people are general bequests. The gift to the appellants is a specific bequest, and that's the reason if you did see fit to call it an redemption, a specific bequest would it be, but it's not a specific bequest. It is a specific bequest, but not substitute redemption. Why don't you save some time for rebuttal? Okay. May it please the Court, on behalf of Bernice Ruby, I think some of the questions that the Court asked are very, very serious on why there has to be redemption. I think we have to step back. When we look and try to figure out what really happened here, we have to look and see and understand who are these people, what kind of life did they lead. They lived a life, it's a period before mine. This is a brother and a sister, lived together their whole life. Before that, lived with their parents. And neither of them ever got married. Neither of them ever had any children. When you look at the trust, what does Irwin do? He has a list of 26 people that he wants to leave things to, and he makes the residuary beneficiary, Bernice, his sister, and he says that he wants to make sure that the condo that they live in, the condo that Bernice and Irwin live in, he puts that into the trust and he says, well, the trust has to pay for that because I want my sister to be taken care of. The overriding consideration of this trust has to be, I'm not going to put my sister on the street. The arguments that counsel makes, if you read it his way, as counsel just said in answer to Your Honor's question, is that everyone gets nothing because they have a specific request. That could not have been Irwin's desire here. Couldn't have because if you read it counsel's way, then everyone else gets a deem. Bernice gets a deem. There's no money to pay for the condo maintenance, expenses, assessments. 26 people that Irwin specifically wanted to give gifts to get nothing? Doesn't make sense. A person doesn't write, I'm leaving things to 26 people and I'm leaving things to my sister that I've lived my whole life and I really have in mind to leave them nothing. It doesn't make any sense. So the next question is, what really happened here? I think that one of the things that counsel said about the change in the accounts being some kind of a bookkeeping change, completely not supported by the record. What occurred here is there was an account, which was a joint account between Irwin and his sister. That was the account number. We don't need the number. There was a joint account. Right. Irwin went to the brokerage house and opened a new account in the name of a trust. That was done a month and a half later. Mr. Laser testified that Irwin specifically knew his accounts, was careful about his accounts, and knew his numbers. Gottman testified, the attorney, that Irwin specifically said he wanted the numbers in that trust. Now, why did he want the numbers? I can't guess what Irwin was thinking and why he specifically put that number. One thing I know for sure is he couldn't have wanted to. Let me ask you this. Who wanted to change the account number? Wasn't that the brokerage firm that wanted to do it? Well, the brokerage firm, I believe the brokerage firm told him that trust accounts, in our bookkeeping system, you must create a new account, and a new account will create a new number. That was, I believe. I mean, that was their idea, not his. I believe it was their idea, but he was aware of the change in the number, and he signed things and documents to change the number. It wasn't like he didn't know that the number was changed. There was a 21-month period, okay, where the evidence is that Irwin was as sharp as a tack, that he knew the number was changed by his own conduct, by him signing and opening a new number, a new account number, and he does nothing. Irwin specifically told Gottman, I want this number. Irwin knew. The brokerage company told him, we're changing the numbers, we're putting it into this new trust account with a trust number. What he could have done if he so chose, over a 21-month period, is go back to the attorney and say, hey, we've got to do something different on my trust because I specifically told you to put that number in. He doesn't do that. Why he doesn't do that, I can only speculate, but one possibility clearly is that he recognized that if he would have done that, everyone else would have gotten nothing, which would have made no sense. He certainly couldn't have wanted that. As the appellate court, are we supposed to deal with possibilities? Well, I think as the appellate court, if you're looking at the intent of Irwin, one thing we know which is undisputed is Irwin specifically wanted that particular number. And the scheme of the trust, as it's written, doesn't work without this redemption because if you don't have this redemption, then you would have had an redemption by the other 26 people and Bernice. And that wouldn't have made sense either. Isn't it just a month apart from the time that the trust is created to the time of the transfer? I believe it's about a month. July of 04 and then the transfers in August. Doesn't that closeness in time lend itself to the argument circumstantially that that series of transactions in July and August was his actions to effectuate the trust? How do you explain that in July of 04 he says, I want the plaintiffs to get all this that's in this account, and then one month later he takes it out of there? How does that affectuate, I mean, how does that bear on his intent? Well, one possibility is a month later he certainly remembered what he did, that he specifically told Gottman, I want these numbers. When he's being told, hey, there's going to be another trust number, he could have changed his mind or he could have understood that he was getting nothing. My personal opinion, which I don't know that it's relevant, but one possibility is that he only intended to leave them half. He could have thought that Bernice and I are joint owners, I can only leave my half, and maybe he was thinking he's going to leave them half. And when he's finally understanding that, oh, it's going to all go into the trust, it could have been that he specifically said, you know what, that's okay with me. I don't want my sister to be left in the cold. And as I've said before, there's no other way for the trust to work. When you look, the other part of the argument. When you use the word possibilities, you mean probabilities. Because the Illinois Supreme Court has said many, many times that we don't deal in possibilities, we deal in probabilities. There's no probability for it to work, and there is no method for it to work. The scheme doesn't work. And one last point, because this is a cross-appeal as well, where the court denied our interim. Counselors argued concerning redemption as well as concerning the interim that somehow these are disfavored. We don't have a forfeiture here. We have someone who specifically waited 21 months before making a claim, and they took $120,000 for themselves and another 80 for their children and families through the specific request. This is not a forfeiture. Now, if a person owed me or your honors a million dollars, and I sent them a check for $30,000, some of them call up and say thank you. None of them are calling up and saying, hey, Bernice, I got the 30. Where's the rest of the million? It doesn't make sense. These people knew exactly what they were doing. They were a stop. For whatever reason, Irwin decided to do that. That's what Irwin decided to do. I'm sorry. Didn't they have the right to take portions of it or all of it? Certainly. Then why are you saying that they're a stop, if they had the right to take portions or all of their request? Because their conduct of waiting 21 months to allow the other distributions shows their intention to make an election. And one issue which I think is apparent from the record is what they were really hoping for is that Bernice, being 90-something, would pass away. That would somehow solve the problem for them. If Bernice passes away, then Gary Bain becomes a successor trustee, and he could fix this for them. Well, God had a different plan. Bernice is still here today. And for those reasons, we believe there was an redemption occurred. The trust scheme doesn't make sense without there being an election. And as Your Honor pointed out, there would be a completely poor and improper result to deny the redemption, which would now cause Bernice to owe money back or to have to return to them money which she paid to the charities, which are all paid in good faith, knowing that she's following the trust directions, which specifically says they get a certain trust number, and she followed up to check what was in that trust account number. And the answer was, by Mr. Laser, the account was open with a zero balance. She did what she was supposed to do, which was pay them. They had nothing coming. The money she gave them there was a gift, and they accepted it. Thank you. Well, it's kind of fanciful to think that Herman Ruby looked at this account, saw there was zero in it, understood the law of redemption, and said, well, they'll get nothing because the law of redemption is going to follow through and they've been redeemed, even though I created this trust. There's no logic to that whatsoever. The idea of about $30,000, they took $30,000 waiting for the rest of it. If there was something wrong with this scheme, Bernice fired Mr. Gottman, then went to Mr. Gottman, but they had plenty of time to come over to the court and file a lawsuit to construe the will if there was something wrong. The idea that Bernice sat as judge and jury and decided $30,000 was a proper sum and then gave them $30,000 because she thought they should get something, there's nowhere is that sum mentioned in the trust. She decided to be judge, jury, and do what she thought she liked to do. And one of the things we can't disregard is she was their fiduciary and she was represented by two different lawyers. When Mr. Gottman, GOPMN, Mr. Gottman told her what to do, she fired him because she didn't want to do it and then she sought Mr. Gottman's advice. But she acted unilaterally. What we ought to be keeping sacrosanct is the fiduciary relationship. She was the fiduciary of her nieces and cousins and nephews and she should have seen fit to it or else gone to the court and sought a construction if she was worried about making these other bequests. She acted unilaterally and she made a mistake. The mistake being whoever advised her didn't tell her that the specific bequest primes the general bequest, which the specific bequest comes to the appellant.  They have to be so crystal clear as to say I leave you the 40 acres and then I sell the 40 acres before I die to get an redemption. That never happens. All of the cases on redemption, there's some sort of conversion of the asset that creates a question. That Brady case, there was that partition of the property before the fellow died, but the court said, well, that didn't change the character of the property as long as it was available to be distributed to the people who it was originally intended. That's what we have here. The property, the contents of account 7146-1159, the contents were available. That's what he wanted them to get, the contents. And those contents were taken out of the joint account and put into the trust account, which was the only way they could go to the appellant. Otherwise, of course, the idea of redemption was to get preserved or destroyed. Had he done nothing, had he left it in the joint tenant account, it would have been destroyed because it would have gone to Bernice. To preserve the gift, the only thing he could do was put it in the trust, which was what he did within a very short period of time of executing the trust. And so the idea that Noyes has now put another account number on it doesn't wipe out the gift. The gift was there, the funds, the exact stocks were there. If there were 100 shares of IBM in 7146, that same 100 shares were in 1285. I have just one question to make this clear in my mind. There is only one David A. Noyes account, correct? It's had four different numbers but one account. He's only had one account, right. And these are all the funds that are in that account that came from 1159. That's all that went in that new account, right? Right. There's no other monies commingled in. No, no, no other monies are commingled. If there are other funds in the name of that trust elsewhere, that doesn't affect us. We only get the proceeds of that one account. Okay. Well, how do you answer the argument that we just heard, that your construction caused the rest of the trust to make no sense? It ceases to be able to be effectuated. Well, Mr. Gottman either used poor math or else there was some alternate source of funding that never made it to the trust. But there's really no other way to do it. I mean, the specific bequest, which they assert, it has to be a specific bequest to a deed. Specific bequest prime the general bequest. Maybe Mr. Gottman thought there was going to be an insurance policy payable to trust or other assets in Irwin's own name that should have gone through probate and made it into this trust and then been available for these people. Or maybe Mr. Gottman just did poor math. I mean, it was poor drafting really to put a trust number in a trust like that anyhow. But Mr. Gottman made some errors here. But that doesn't mean that my client should be penalized for Mr. Gottman's errors. But it's clear in his notes that Irwin intends not to benefit Bernice, regardless of how long they lived together, and he had every right not to. And by the way, those assets that got into that trust, that all came from Irwin. And that's what Mr. Lazar testified to. And although Bernice said she contributed to that joint account, she never produced one piece of paper that actually showed a contribution. So it was Irwin's money. He broke the joint tenancy with his sister. He put it into this account to benefit the four people, his four cousins, and that's where we're at right now. And also, if you recall in the Bowman case, the law of redemption has never really been extended to trust. It's only essentially in a state of probate issue. And it's certainly not an affirmative defense to misconduct. You can't let somebody, a fiduciary as a matter of fact, misbehave and then set up redemption as an affirmative defense. I did what I wanted to do, and it had deemed and so I'm off the hook. It's not an affirmative defense. It's a rule of construction, and it doesn't work here. There was no redemption. Thank you very much. You gave us a very interesting case, and we'll take it under advisement.